MARTHA LENNON, EXECUTRIX, RESPONDENT, v. ERIE RAILROAD COMPANY, APPELLANT.

Submitted March 25, 1918—Decided June 17, 1918.

1. The plaintiff's testator, while in the line of his duty as defendant's servant, was killed when riding on the running-board of a moving car, on which defendant had negligently allowed a plank to be placed and carried for the use of one of defendant's trainmen, and while the train was in motion a fellow servant of the deceased, passing along the running-board in order to dismount, negligently struck his foot against the plank causing one end to fall to the ground, and the other to strike and kill the deceased. *Held*, it was not error to leave to the jury the question whether the deceased had assumed the risk of working in a dangerous place, the evidence not being conclusive that the risk was obvious.

2. The cause of action rested on the Federal Employers' Liability act, under which the representative of a deceased person may recover in a single action, damages for pain suffered by an injured person between his injury and death, and also for pecuniary damages resulting to the next of kin from the death, although the causes of action are separate and distinct. *Held*, that under this statute both causes of action must be set up in the pleadings if recovery be sought in each, and if plaintiff proceeds to trial on a complaint for pecuniary damages resulting from death alone, and refuses, when given opportunity to do so, to amend his complaint to embrace the other cause of action, it was error to permit evidence, over objection, in support of the injury not covered by the complaint. The statute gives a single action for a double wrong, but each wrong must be declared on.

On appeal from the Hudson County Circuit Court.

For the respondent, *Alexander Simpson.*

For the appellant, *Collins & Corbin.*

The opinion of the court was delivered by

BERGEN, J. This action was instituted by the plaintiff as executrix of Adolph Schneider, deceased, under the Employers' Liability act of the United States, for the benefit of the wife and children of the deceased, who was so injured that he died

from the result of an accident happening to him while in defendant's service. Under the charge of the court the jury rendered verdicts for separate sums, one for $1,000 for the pain and suffering endured by the deceased between the accident and his death, and another for $6,000 for the pecuniary loss sustained by the widow and children of deceased. The wife survived her husband but a short time and the court instructed the jury as to her pecuniary loss to which no exception was taken. There were facts proven from which the jury might infer, if they accepted the testimony as true, that a train of defendant's, consisting of about twenty-two cars, was being moved a short distance in charge of defendant's servants and that deceased had some duties to perform in relation thereto which required his presence on the train; that the train consisted of cars of different character, some being tank cars for carrying oil; that on each side of these cars was a running board for the use of trainmen; that some one had placed on the running board of one of them a plank, which was not a part of the equipment, but carried for the benefit of one of the trainmen for firewood; that deceased was sitting on the running board near one end of the car with his legs hanging over the edge, and when it approached the point where one of the servants desired to get off the car, while in motion, he struck the plank, causing it to move so that one end fell to the ground and the other, supported by the edge of the car, struck the side of the deceased and threw him to the ground, causing injuries from which death resulted in four days thereafter. The defendant has appealed and urges the following reasons for reversal of the judgment: *First.* That it was error to submit to the jury any question of defendant's negligence because of an alleged custom to permit its employes to carry planks and boards on its trains. The contention of the plaintiff being that the servants of defendant had been accustomed to transport on this and similar trains wood, planks and boards for their own purposes for so long a time that it had become a known custom; that in this case the plank was being carried according to that custom by permission of the agents of the company who had the power to prevent it, and that this custom

had so long existed that the company or its authorized agents, were chargeable with notice of it. Against this the appellant argues (*a*) that the complaint did not allege the custom. We see no force in this. The complaint avers that because of the plank the deceased was not furnished with a safe place to work, and knowledge of that condition may be charged to defendant if a course of conduct has been pursued by its servants for so long a time as to charge it with notice of such a custom. Proof of knowledge of a dangerous situation sustains the averment that the place furnished is unsafe; (*b*) that there was no sufficient proof of the custom, we think there was enough to take that question to the jury, for there was proof that on many occasions defendant's servants carried bundles of wood, and in other cases boards and planks were put on cars for the benefit of servants, and that this had been going on for a long time, that one of the witnesses said it had become a habit of the servants to take home firewood in this way and we cannot say that there was no evidence of such custom which a jury ought not to be allowed to consider; (*c*) that even if such a custom was established the defendant was not liable because these planks and boards were carried by defendant's servants outside the scope of their duties, and therefore not fellow servants, and that the defendant could not, legally, expressly or impliedly, consent to the free transportation of the plank. But this overlooks the rule that the master is bound to provide a safe place in which his servants are to work, and he cannot avoid that duty by permitting some of his servants to make the place unsafe for others, nor is his neglect cured because another servant creates the condition when not in service. His duty is to correct the unsafe condition if he has knowledge of it, and he will not be relieved, if consenting, upon the ground that he has no authority to consent, for he cannot escape liability by saying, "My consent to the act which made the place unsafe was unlawful." It makes no difference by whom the unsafe condition is created the master must, if he has knowledge, correct it, or if likely to result from a course of conduct to his knowledge, take reasonable precautions to prevent it.

The ground of this action is not the negligence of a fellow servant in the line of his duty, but the negligence of the defendant in permitting a condition which made or was likely, to its knowledge, to make the place unsafe for his servants to work in.

*Second.* That there was no evidence of negligence on the part of defendant in not using reasonable care to provide a safe place. The argument in support of this is that there was a thorough inspection before the train started and no plank was on the car. There was testimony from which a jury might infer that the plank was on the car, and if the inspectors did not see it a jury question arose, whether the inspection was properly made. This is argued as a question of fact which the jury found against the defendant. We do not review questions of fact if there be any evidence to support the verdict. There was evidence that the plank was in plain view and could have been seen by proper inspection, and the jury might determine that testimony that the plank was not on the car indicated careless inspection, and the submission of that question to the jury was not error.

*Third.* That there was no evidence of negligence by a fellow servant of the deceased. The facts proven were that a servant of the defendant named Scott was, in the line of his duty, on the running board of the car with the deceased upon which the plank was; that Scott, intending to get off the car while in motion at a point near his home, started to walk along the running board to the end of the car where a step was located, and in doing this stepped on the plank which caused one end of it to drop from the car and strike the ground producing the accident. We think that a jury might find that under the circumstances Scott ought reasonably have expected that stepping on, or striking it with his foot, the plank would produce the result which occurred, and that in doing this he was negligent. If he had avoided the plank, and there is nothing to show he could not, the accident would not have happened, and whether his conduct was negligent was for the jury and properly submitted to it.

*Fourth.* That deceased so conclusively assumed the risk of injury by sitting on the running board that no jury question remained, that is, with the plank on the car, deceased assumed the risk that some one would step on the plank so as to over-balance it sufficiently to throw it to the ground in such manner as to come in contact with him. Whether a servant assumes the risk of injury in his master's service depends upon the facts and circumstances in each particular case. "It is not merely the physical surroundings of the servant that must be obvious to him in order that he may be held to have assumed the risks arising therefrom, but it must be obvious to him, or at least to an ordinarily prudent servant, under the circumstances, that there is danger in such a situation." *Burns* v. *Del. & Atl. Telegraph Co.*, 70 *N. J. L.* 745. In the present case there was no direct proof that deceased ever saw the plank before it struck him, it is urged, that situated as he was he must have seen it, but Scott who was on the same running board testified he did not see it until he stepped on it. We are of opinion that it was not so conclusively shown deceased knew of the presence of the plank as to withhold the question from the jury. But if he did know it cannot be said that the concurring cause, viz., the conduct of Scott in making the primary negligence effective was so obvious that its risk was assumed. The consequence of the negligence of the master, through a concurring cause for which he is responsible, does not charge the injured servant with the assumption of the risk, unless it be obvious, and where, as in this case, the knowledge by the servant of a dangerous condition, the risk of which it is claimed he assumed because obvious, or otherwise acquired, is to be inferred from testimony which is not conclusive, a jury question is present and its submission to the jury was not error.

*Fifth.* That it was error to submit to the jury, as a basis for recovery, the pain and suffering the deceased endured between the accident and his death, there being no supporting allegation in plaintiff's complaint. The complaint does not aver any such ground for recovery, and when the evidence

on that point was offered defendant objected to it for that reason. The trial court then, expressing doubt, offered to permit the plaintiff to amend his complaint in order to meet this objection, but the plaintiff refused to amend upon the ground that "The statement comes in the damage clause," which was "The plaintiff demands $50,000 damages." That such a clause does not state a cause of action requires no discussion, and without amendment the cause of action alleged in the complaint was for pecuniary damages recoverable by the next of kin, because of the death of the deceased. Notwithstanding plaintiff's refusal to amend the complaint to cover the pain and suffering of deceased between the accident and death, the trial court admitted the evidence objected to, and instructed the jury, if they found for plaintiff, to render separate verdicts which they did as above stated, and judgment was entered for $7,000. This action is based on the Federal Employers' Liability act and is governed by that statute, and under it the Supreme Court of the United States held in *St. Louis & Iron Mtn. Ry.* v. *Craft*, 237 *U. S.* 648, that a recovery could be had for damages growing out of loss and suffering endured by an injured decedent while he lived, and also for the pecuniary loss suffered by the beneficiaries named in the statute because of his death, in the same action, recognizing, however, that the two claims are different. "Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other." But the right to recover in a single action for a double wrong does not include a right to recover for a wrong not counted on in the pleadings, and not within the issue framed by them. The defendant was not required by the complaint to prepare to meet the question relating to pain and suffering, and if the complaint was amended, might have been allowed time to meet the new issue with a different defence, but to prevent this the plaintiff refused to amend his pleadings to embrace the issue to which the objectionable testimony was directed, and the defendant had no opportunity to plead to the issue the plaintiff was allowed to prove with-

out an averment which defendant might traverse.   Nor ought
this court to now permit an amendment which the plaintiff
refused at the trial, probably because at that time the statute
of limitations had run as to the new matter, but, whatever
the reason, he had the opportunity and he refused it, and an
amendment now would perhaps deprive defendant of a legal
defence which he could not raise at the trial for want of a
pleading to answer.   That the pleading should include both
causes of action for the double wrong is indicated in *Wash-
ington Ry. & Elec. Co. v. Scala*, 244 *Id.* 630.

The admission of the testimony objected to was error, and
without it there is no support for so much of the judgment
as includes the verdict of $1,000 awarded for pain and suffer-
ing of deceased, and to that extent the judgment is erroneous
and should not exceed $6,000.

The judgment will be modified and the record remitted
to the Hudson County Circuit Court in order that the judg-
ment be modified according to the views herein expressed.

Remanded for modification.

*For affirmance*—None.

*For reversal*—None.

*For modification*—THE CHANCELLOR, CHIEF JUSTICE,
SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH,
BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARD-
NER, JJ.   14.